Floyd W. Bybee, #012651
Law Office of
Floyd W. Bybee, PLLC
4445 E. Holmes Ave., Ste. 107
Mesa, AZ 85206-5530
Office: (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly Wood, and Martin Wood, husband and wife;<br><br>    Plaintiffs,<br><br>v.<br><br>Arrow Financial Services LLC, a Delaware limited liability company; Paul D. Guglielmo doing business as Guglielmo & Associates; and<br><br>    Defendants. | No.<br><br>COMPLAINT<br><br>(Jury Trial Demanded) |

Plaintiffs allege as follows:

## I. Preliminary Statement

1. Plaintiffs bring this action for damages based upon Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. (hereinafter "FDCPA"), and for state law claims for unreasonable debt collection and invasion of privacy. In the course of attempting to collect a debt allegedly owed by Plaintiffs, Defendants

1  engaged in deceptive, unfair and abusive debt collection practices in
2  violation of the FDCPA, and took actions which constitute
3  unreasonable debt collection and invasion of privacy under the doctrine
4  enunciated in <u>Fernandez v. United Acceptance Corporation</u>, 610 P.2d
5  461 (Ariz. App. 1980).  Plaintiffs seek to recover actual damages, and
6  statutory damages, punitive damages, as well as reasonable attorney's
7  fees and costs.

8  II.  Statutory Structure of FDCPA

9  2.  Congress passed the FDCPA to eliminate abusive debt collection
10 practices by debt collectors, to insure that those debt collectors who
11 refrain from using abusive debt collection practices are not
12 competitively disadvantaged, and to promote consistent state action to
13 protect consumers against debt collection abuses. FDCPA § 1692.

14 3.  The FDCPA is designed to protect consumers who have been
15 victimized by unscrupulous debt collectors regardless of whether a
16 valid debt exists.  <u>Baker v. G.C. Services Corp.</u>, 677 F.2d 775, 777 (9th
17 Cir. 1982).

18 4.  The FDCPA defines a "consumer" as any natural person obligated or
19 allegedly obligated to pay any debt.  FDCPA § 1692a(3).

20 5.  The FDCPA defines "debt" as any obligation or alleged obligation of a
21 consumer to pay money arising out of a transaction in which the
22 money, property, insurance, or services which are the subject or the
23 transaction are primarily for personal, family, or household purposes.
24 FDCPA § 1692a(5).

25 6.  The FDCPA defines "debt collector' as  any person who uses any

instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.  FDCPA § 1692a(6).

7. Any debt collector who fails to comply with the provisions of the FDCPA is liable for any actual damage sustained; statutory damages up to $1,000; attorney's fees as determined by the Court and costs of the action. FDCPA § 1692k.

## III.  Jurisdiction

8. Jurisdiction of this Court, over this action and the parties herein, arises under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. §1337. Venue lies in the Phoenix Division of the District of Arizona as Plaintiffs' claims arose from acts of the Defendants perpetrated therein.

## IV.  Parties

9. Plaintiffs are individuals and residents of Maricopa County, Arizona.
10. Plaintiffs are allegedly obligated to pay a consumer debt.
11. Plaintiffs are "consumers" as defined by FDCPA § 1692a(3).
12. Defendant Arrow Financial Services LLC is a limited liability company domiciled in the State of Delaware.
13. Arrow regularly collects or attempts to collect debts owed or asserted to be owed or due another.
14. Arrow regularly collects or attempts to collect debts which it has purchased after default.

15. Arrow is a "debt collector" as defined by FDCPA § 1692a(6).
16. Defendant Paul D. Guglielmo is an Arizona licensed attorney operating a law firm under the name of Guglielmo & Associates.
17. Guglielmo employs other attorneys to practice law under his firm name of Guglielmo & Associates.
18. Guglielmo is engaged in the business of collecting debts alleged to be due another.
19. Guglielmo is a "debt collector" as defined by FDCPA § 1692a(6).
20. Guglielmo also employs non-attorneys to assist his firm in the collection of debts alleged to be due another.
21. Guglielmo is liable for the acts of his employees and agents within the scope of their authority under the doctrine of respondent superior.
22. Guglielmo created the collection policies and procedures utilized by the attorneys and other employees of his law firm.
23. Guglielmo manages the daily collection operations of his law firm, and oversees the application by his attorneys and other employees of his collection policies and procedures.
24. At all times relevant herein, Guglielmo acted as an agent of Arrow in the collection or attempted collection of an alleged debt from Plaintiffs.

V.  Factual Allegations

25. In late spring or early summer of 2007, Plaintiffs began receiving telephone calls from Guglielmo's office concerning a alleged debt originally owed to Washington Mutual Bank.
26. Plaintiffs had never had an account with Washington Mutual.
27. Plaintiff Kimberly Wood's mother, Karen Green, banked with

|    |     |                                                                                     |
|----|-----|-------------------------------------------------------------------------------------|
| 1  |     | Washington Mutual and had a credit card through the bank.                           |
| 2  | 28. | Because her mother was elderly and lived with Plaintiffs, she put Kimberly's name on all her Washington Mutual accounts, including making Kimberly an authorized user on her Washington Mutual credit card account. |
| 6  | 29. | Plaintiffs never agreed to be responsible to Washington Mutual for her mother's credit card account. |
| 8  | 30. | Plaintiffs' mother passed away in May 2002.                                         |
| 9  | 31. | The Washington Mutual credit card account defaulted shortly thereafter.             |
| 11 | 32. | Washington Mutual sold the account to Arrow Financial.                              |
| 12 | 33. | Arrow Financial assigned the account to Guglielmo and his law firm for collection purposes. |
| 14 | 34. | When Plaintiffs received the first telephone call from Guglielmo's office, Kimberly told the collector, Jeff, that she had never had an account with Washington Mutual and that this account belonged to her mother. |
| 18 | 35. | During this conversation, Jeff was very rude to Kimberly and told her that she was a loser and a deadbeat, and that she was just trying to get out of paying her bills. |
| 21 | 36. | During this conversation, Jeff also told Kimberly that he was going to take Plaintiffs' home and that that should "really make your husband happy." |
| 24 | 37. | Guglielmo's office continued to telephone Plaintiffs concerning the Arrow Financial account, sometimes two times a day. |

38. In or about July 2007, Plaintiffs went to Seattle to visit family.
39. While in Seattle, Jeff called Plaintiffs and demanded that they send him $1,000 that day and that they send the rest of the money by the end of that week.
40. Jeff went on to explain that if Plaintiffs did not make the $1,000 payment and pay the balance by the end of the week, that their house would have a lien on it by the next day.
41. When Kimberly explained that she did not have the money to make the payment, and that she was not sure that the account was even theirs, Jeff became very abusive and rude and called Kimberly more derogatory names.
42. When Kimberly told Jeff that she was not going to speak with him any more and that she was going to report him to his boss for his abusive language, Jeff told her that his boss would not care because they were allowed to do what they needed in order to get the money owed and that they would be getting Plaintiffs' house anyway whether she talked to him or anyone else at the office.
43. On or about July 7, 2007, Guglielmo's office prepared and filed suit on behalf of Arrow Financial in the Agua Fria Justice Court.
44. In the Complaint, Defendants alleged that Plaintiffs "made purchases which were financed by WASHINGTON MUTUAL BANK."
45. Defendants also alleged that Plaintiffs were liable for the full balance on the account which was $4,558.05, plus legal interest, costs and attorney's fees.
46. Defendants attached no documentation to the Complaint, and failed to

|   |     |                                                                          |
|---|-----|--------------------------------------------------------------------------|
| 1 |     | even identify the account number associated with the account.            |
| 2 | 47. | Upon information and belief, at the time Defendants filed the suit, they had no records on the Washington Mutual account showing that Plaintiffs were liable. |
| 5 | 48. | On or about August 1, 2007, Defendants hired as their agent a process server to serve the summons and complaint on Plaintiffs. |
| 7 | 49. | On August 1, 2007 Defendants' process server brought the summons to Plaintiffs' house. |
| 9 | 50. | Plaintiffs were not home, but their sixteen year old daughter was at home. |
| 11| 51. | The process server told Plaintiffs' daughter that she had better open the door because he had court papers and that her parents were going to lose their house because they owed money and didn't want to pay. |
| 14| 52. | Plaintiffs' daughter was scared and opened the door to the process server. |
| 16| 53. | The process server then told Plaintiffs' daughter that her parents were in a lot of trouble with the courts and that he needed to know her father's name and where he worked, and his phone number. |
| 19| 54. | The process server then threatened Plaintiffs' daughter that she had better give Plaintiffs the paper work or she would have no home. |
| 21| 55. | The process server's threats scared Plaintiffs' daughter. |
| 22| 56. | The threats to Plaintiffs' daughter were immediately conveyed to Plaintiffs upon their return home. |
| 24| 57. | These threats scared Plaintiffs and caused them great worry. |
| 25| 58. | The threats also angered them because of the way their daughter had |

1 been mistreated.

2 59. Because of the worry of losing their home, Plaintiff Martin Wood contacted the legal department at his work to find out whether Defendants could put a lien on their house.

60. Kimberly filed an Answer to the justice court complaint on August 23, 2007.

61. Soon after filing the Answer, Plaintiffs started to receive calls from Gabe at Guglielmo's office.

62. Gabe told Plaintiffs that he had spoken with Mr. Guglielmo and that he did not want to go to court and wanted to know if they could settle the account.

63. Plaintiffs asked Gabe to fax over the paperwork on the account so they could see if in fact they were liable on the account as Guglielmo's office had continually stated.

64. Defendants never provided Plaintiffs with any paperwork showing Plaintiffs were liable on the account.

65. On August 28, 2007, Defendants filed a Motion for Judgment on the Pleadings and attached an Affidavit of Attorney Fees.

66. In the Affidavit of Attorney Fees, Defendant Guglielmo falsely stated "I have expended several hours in my attempt to collect this obligation."

67. Attached to Guglielmo's Affidavit is an "Itemization of Services."

68. In this Itemization of Services, Guglielmo falsely claims to have spent .7 hours preparing a summons, complaint and a certificate of compulsory arbitration.  No certificate of compulsory arbitration was

1       filed or even necessary in the justice court action.

2  69.  Guglielmo also falsely stated in the Itemization of Services that he
3       spent .5 hours "Review[ing] File [and] Preparing Application/Notice of
4       Default."

5  70.  Guglielmo's office did not file an Application/Notice of Default on
6       Kimberly Wood.

7  71.  Guglielmo's office did not file its Application/Notice of Default on
8       Martin Wood until September 5, 2007.

9  72.  As a result on Defendants actions, Plaintiffs were required to hire an
10      attorney to defend them in the Agua Fria Justice Court action.

11 73.  During the Justice Court action, discovery requests were served on
12      Arrow Financial to produce records and documents to support its claim
13      that Plaintiffs owed the Washington Mutual debt.

14 74.  Arrow Financial produced no records in response to the discovery
15      requests.

16 75.  Defendants subsequently dismissed the Agua Fria Justice Court action
17      against Plaintiffs.

18 76.  As a result of Defendants' outrageous actions as outlined above,
19      Plaintiffs have suffered damages including, but not limited to, costs
20      and attorney's fees in connection with the justice court action,
21      emotional distress, embarrassment, humiliation, anger, sleeplessness,
22      family conflict, headaches, inability to concentrate, depression, upset
23      stomach, and other severe emotional distress.

24 77.  Defendants' actions taken here were intentional, willful, and in gross
25      or reckless disregard of Plaintiffs' rights and part of their persistent

and routine practice of debt collection.

78. In the alternative, Defendants' actions were negligent.

### VI.  Causes of Action

#### a.  Fair Debt Collection Practices Act

79. Plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.

80. Defendants' violations of the FDCPA include, but are not necessarily limited to, 15 U.S.C. §§ 1692d, 1692d(2), 1692d(5), 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(4), 1692e(5), 1692e(8), 1692e(10), 1692f, 1692f(1), and 1692g.

81. As a direct result and proximate cause of Defendants' actions in violation of the FDCPA, Plaintiffs have suffered actual damages.

#### b.  Invasion of Privacy

82. Plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.

83. Defendants' actions constitute unreasonable debt collection and an invasion of Plaintiffs' privacy pursuant to the doctrine enunciated in <u>Fernandez v. United Acceptance Corporation</u>, 610 P.2d 461 (Ariz. App. 1980).

84. As a direct result and proximate cause of Defendants' actions, Plaintiffs have suffered actual damages for which Defendants are liable.

### VII.  Demand for Jury Trial

Plaintiffs hereby demand a jury trial on all issues so triable.

VIII.  Prayer for Relief

WHEREFORE, Plaintiffs requests that judgment be entered against Defendants for:

a) Statutory damages of $1,000 per Defendant pursuant to §1692k;

b) Actual damages in an amount to be determined by trial;

c) Punitive damages in an amount to be determined at trial;

d) Costs and reasonable attorney's fees pursuant to §1692k; and

e) Such other relief as may be just and proper.

DATED __March 19, 2008__.

 s/ Floyd W. Bybee
Floyd W. Bybee, #012651
Law Office of
Floyd W. Bybee, PLLC
4445 E. Holmes Ave., Ste. 107
Mesa, AZ 85206-5530
Office:  (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiffs